IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LUIS D. CABRERA MEJIA,                )
                                      )
                Plaintiff,            )
                                      )
        v.                            )         1:14CV237
                                      )
WAL-MART,                             )
                                      )
                Defendant.            )

## **MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This is an employment discrimination action. Plaintiff Luis D. Cabrera Mejia, proceeding *pro se*, alleges that Wal-Mart failed to provide him with a reasonable accommodation, subjected him to acts of disability discrimination, and terminated him because of his disability, in violation of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq. Wal-Mart argues that Mejia's complaint fails to state a claim and moves to dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (Doc. 14.) Mr. Mejia's personal situation appears difficult and sad, but, for the reasons set forth below, it fails to rise to the level of an ADA claim. Accordingly, Wal-Mart's motion to dismiss will be granted, and the case will be dismissed.

---

[1] Wal-Mart asserts that the correct corporate title for the Defendant is "Wal-Mart Stores East, LP."

**I. BACKGROUND**

On a motion to dismiss, the court views the facts in the light most favorable to Mejia. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

From 2011 until June 21, 2013, Mejia, a naturalized Dominican-American, worked at an unspecified Wal-Mart store as a customer service manager. (Compl. at 3, 10.) While at work on May 1, 2013, Mejia became worried about being fired (apparently because of a criminal assault charge against him filed by his wife, with whom he was having marital problems) and asked for time to talk to shift manager Dave Rhyne and other employees. (Id. at 10, 29.) On May 1st, 2013, Rhyne – along with several other employees and managers – met with Mejia in the store's "cash office." (Id. at 21, 29.) According to Mejia, during the course of that conversation he asked Rhyne whether he was racist, to which Rhyne replied "he 'might be right about that.'"[2] (Id. at 20, 29.)

Later that day, Mejia had a second conversation with Rhyne. (Id. at 20-21, 30.) That conversation concerned a "personal discussion" Mejia had had with a Wal-Mart cashier. (Id.) After being informed of that discussion, Rhyne turned to another

---

[2] Mejia repeatedly characterizes this statement as a "racial slur." (Compl. at 2.)

employee and, referring to Mejia, said "this man is going to make me kill him." (Id.) Following these two incidents, Mejia developed an anxiety disorder and depression.[3] (Compl. at 2, 6-9, 18-19.) The two conversations with Rhyne further agitated Mejia's prior intestinal problem. (Id. at 2.) Mejia also lost approximately twenty to thirty pounds and attempted suicide. (Id. at 2-4.) A few weeks after the incidents, in June 2013, Mejia stopped coming to work for a week and a half without prior notice. (Id. at 2-3.) Mejia alleges that a variety of medically-related issues caused this absence. (See id. at 2-3 (citing a lack of sleep, "passing gas," and uncontrollable bowel movements)).

Mejia eventually reported both conversations with Rhyne to Wal-Mart's home office but was told to speak to the store manager, Daniel Barsdin, because the conversations had occurred more than three weeks prior. (Id. at 2.) On June 21, 2013, after his week-and-a-half absence from work, Mejia met with Barsdin. (Id. at 2-4.) He told Barsdin that he had developed an anxiety disorder and depression because of the conversations with Rhyne and that he had stopped coming to work as a result. (Id. at 2.) According to Mejia, he had previously discussed his medical conditions with Barsdin in March and May of 2013. (Id.

---

[3] Mejia's attached medical records, however, indicate that, before the May 1 incident, Mejia already felt depressed, had "a history of anxiety," and had previously been diagnosed with an anxiety disorder. (Compl. at 10, 14-17.)

3

at 4.) Mejia also told Barsdin that, if he "fix[ed] the problem," he would return to work. (Id. at 4, 23, 31.) At the meeting, Mejia attempted to give Barsdin a police report and one of his medical evaluations at the meeting. (Id. at 4.) Barsdin refused to accept those documents and instead asked that Mejia write a statement. (Id. at 3.) Mejia refused Barsdin's request and said that he was going to contact a lawyer. (Id. at 3–4.) After this meeting with Barsdin, Mejia "never returned to work" and has "since been separated." (Id.) Following the June 21 meeting, Mejia filed an Equal Employment Opportunity Commission ("EEOC") charge on December 9, 2013, claiming disability discrimination. (Id. at 23.) In his EEOC charge, Mejia stated that, as of May 4, 2013, he "did not ask nor did [he] need reasonable accommodation." (Id.)

Mejia filed this *pro se* complaint on March 20, 2014. (Doc. 2.) The complaint asserted claims of disability discrimination based on Wal-Mart's failure to accommodate Mejia's disability, Wal-Mart's refusal to accept documentation of his disability, and Mejia's discharge.[4] (Id. at 2–5.) Attached to the complaint are medical records, a police report, an EEOC charge and right-to-sue letter, and a number of documents typed and written by Mejia. (See Doc. 2.) Subsequent to filing the complaint, Mejia

---

[4] Although citing 42 U.S.C. § 2000e-3 as the jurisdictional basis for his complaint, Mejia makes no factual allegation that Wal-Mart retaliated against him for filing an EEOC charge. (See Compl. at 1.)

4

filed several additional documents as attachments and exhibits to his complaint.[5] (Docs. 5, 11, 13.) On June 26, 2014, Wal-Mart filed a motion to dismiss Mejia's complaint for failure to state a claim. (Doc. 15.) Mejia responded (Doc. 17), Wal-Mart replied (Doc. 18), and Mejia filed a further response (Doc. 19). Wal-Mart's motion is now ripe for consideration.

## II. ANALYSIS

### A. Standard of Review

A court must construe *pro se* litigants' complaints liberally, thus permitting a potentially meritorious case to develop if one is present. Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). However, this rule does not require that the court become an advocate for the unrepresented party. Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990). "Only those questions which are squarely presented to a court may properly be addressed." Id.

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain a short and plain statement of the claim

---

[5] Although labelled as attachments, these additional documents were not filed with the complaint. Because these filings provide no new factual allegations but simply repeat allegations from the complaint and its attachments, this court need not determine whether it should consider those later-filed documents. See Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (requiring that, to be considered on a motion to dismiss, a document not attached to the complaint be both "integral to and explicitly relied on in the complaint").

5

showing that the pleader is entitled to relief. Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). A Rule 12(b)(6) motion to dismiss "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (internal citations omitted).

**B. Failure to Accommodate**

Mejia first asserts that Wal-Mart failed to reasonably accommodate his disability. (Compl. at 3.) Wal-Mart counters that Mejia fails to state a claim for reasonable accommodation under the ADA. (Doc. 15 at 6–8.) Wal-Mart is correct.

To state a claim for failure to accommodate, a plaintiff must allege facts that (1) he had a disability within the meaning of the ADA; (2) his employer had notice of his disability; (3) he could perform the essential functions of his job with reasonable accommodation; and (4) his employer refused to make such accommodations. See Wilson v. Dollar Gen. Corp.,

6

717 F.3d 337, 345 (4th Cir. 2013). Because Mejia's complaint fails to allege facts demonstrating that he could have performed his job's essential functions with reasonable accommodation, dismissal of Mejia's claim under Rule 12(b)(6) is proper.

Mejia claims that, at the June 21 meeting, he requested that Barsdin "fix the problem."[6] (Compl. at 4, 31.) Mejia's request was made after informing Barsdin of his anxiety and depression stemming from the May 1 conversation. (Id. at 3, 31.) He further states that he could have "come back to work" if the problem was fixed, referring to the May 1 conversation between Mejia and Rhyne. (Id. at 4, 31.)

Mejia's complaint, however, lacks the specificity required to survive a motion to dismiss. See Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) ("The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6).") (citing Iqbal, 556 U.S. at 678)). For one, Mejia's complaint (at best) alleges a request for some unknown accommodation. Beyond that vague allegation, the complaint offers no details as to whether the requested accommodation was plausible or even what it was. See Cooper v. Cmty. Haven for

---

[6] Mejia's EEOC complaint dated December 9, 2013, states that, as of May 4, 2013, Mejia "did not ask nor did [he] need reasonable accommodation." (Compl. at 23.) That statement does not conflict with the complaint's allegation that an accommodation request was made to Barsdin on June 21, 2013.

7

Adults & Children With Disabilities, No. 8:12-CV-1041-T-33EAJ, 2013 WL 24240, at *7 (M.D. Fla. Jan. 2, 2013) (concluding that a request to "do it [d]ifferent" is insufficient to state a claim for failure to accommodate); Shaywitz v. Am. Bd. of Psychiatry & Neurology, 675 F. Supp. 2d 376, 390 (S.D.N.Y. 2009) (requiring that a plaintiff allege at least a "plausible accommodation" to survive a motion to dismiss); Getso v. City Univ. of New York, No. 08 CIV. 7469 (LAP), 2009 WL 4042848, at *4 (S.D.N.Y. Nov. 18, 2009) ("The Amended Complaint fails to state that Plaintiff requested and was denied a specific accommodation. Plaintiff's allegations suggest only that he requested some abstract 'reasonable accommodation.' Without being more specific, Plaintiff cannot make out a claim under . . . the ADA.").

Moreover, Mejia fails to provide even the most basic details about his job, let alone that he could have performed its essential functions. See Rubino v. New Acton Mobile Indus., LLC, CIV.A. RDB-13-2651, 2014 WL 4267493, at *5 (D. Md. Aug. 27, 2014) ("Without even a cursory description of what kind of work the Plaintiff does, he has simply recited the elements of the cause of action."); Kelley v. Corr. Corp. of Am., 750 F. Supp. 2d 1132, 1139 (E.D. Cal. 2010) (dismissing complaint for giving "no information at all as to what Plaintiff [could] do or what the essential elements of Plaintiff's job [were]"); Morgan v. Rowe Materials, LLC, CIV.A. 3:08CV576, 2009 WL 1321514 (E.D. Va.

May 11, 2009) (dismissing a failure-to-accommodate claim, in part, because the plaintiff failed to state "what his job entailed" and "whether he is able to perform the essential functions of his job, with or without reasonable accommodation"). In short, Mejia fails to allege with any specificity that he could have performed the essential functions of his job with reasonable accommodation. Therefore, Mejia's complaint fails to state an ADA claim for failure to accommodate, and Wal-Mart's motion to dismiss this claim is accordingly granted.

**C. Wrongful Discharge**

Mejia next alleges that Wal-Mart fired him because of his disability. According to Mejia's complaint, he "never returned to work" after the June 21 meeting and "has since been separated" from Wal-Mart. (Compl. at 4.) Wal-Mart again argues that Mejia fails to state a claim of discriminatory discharge under the ADA. (Doc. 15 at 8-9.) Because Mejia states no facts giving rise to a reasonable inference of unlawful discrimination, his claim fails to state a claim of discriminatory discharge for purposes of Rule 12(b)(6).

An ADA discriminatory discharge claim requires allegations of facts showing that the employee (1) "was a qualified individual with a disability"; (2) "was discharged"; (3) "was fulfilling his employer's legitimate expectations at the time of

9

discharge"; and (4) "the circumstances of his discharge raise a reasonable inference of unlawful discrimination." Reynolds v. Am. Nat'l. Red Cross, 701 F.3d 143, 150 (4th Cir. 2012) (quoting Rohan v. Networks Presentations LLC, 375 F.3d 266, 273 n.9 (4th Cir. 2004)). Assuming that the complaint's factual allegations are true, Mejia's account of how he left his job still lacks facts alleging that he was discharged and raises no reasonable inference that Wal-Mart discriminated against him. Mejia simply alleges that, after the June 21 meeting with Barsdin, he "never returned to work" and that he has "since been separated." (Compl. at 3-4.) Nothing in the complaint suggests that Wal-Mart fired him because of disability. The complaint is not even clear as to whether Mejia was fired or if he instead quit. (Id. (stating that Mejia has "since been separated" from Wal-Mart.) Mejia essentially alleges that he walked out of the June 21 meeting with Barsdin and that his failure to return to work was of his own accord. (Id. at 31.) Without factual allegations, Mejia's claim fails to support a reasonable inference that he was discriminatorily discharged. Wal-Mart's motion to dismiss as to this claim is therefore granted.[7]

---

[7] Although Wal-Mart does not argue that Mejia was not meeting its legitimate expectations, Mejia's allegations make clear that he failed to attend work for a week and half without prior notice and never returned to work after the June 21 meeting with Barsdin. See Jones v. HCA, No. 3:13CV714, 2014 WL 1603739, at *7 (E.D. Va. Apr. 21, 2014) (dismissing claim for failing to allege facts supporting a reasonable

10

**D. Other Discriminatory Actions**

Finally, Mejia cites Barsdin's refusal to accept his medical evaluation and police report at the June 21 meeting as discriminatory conduct under the ADA. (Compl. at 3, 23, 31.) The refusal to accept those documents, however, is not an adverse employment action.

The ADA bars an employer from discriminating against an employee "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To state an ADA discrimination claim, a plaintiff must allege facts demonstrating that he (1) has a disability; (2) is a "qualified individual;" and (3) suffered an adverse employment action. See EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000).

Mejia alleges that Barsdin would not accept two documents – a medical evaluation and a police report. There is no factual allegation that Barsdin had any responsibility to accept those documents, that the refusal to accept those documents had any effect on Mejia's employment status, or, most importantly, that the refusal to accept them was even because of disability

---

inference that employee was meeting his employer's "legitimate expectations").

11

discrimination. See Salami v. N.C. Agr. & Technical State Univ., 394 F. Supp. 2d 696, 712 (M.D.N.C. 2005) ("An adverse employment action is an action which results in a 'significant detrimental effect' to the employee."), aff'd, 191 F. App'x 193 (4th Cir. 2006). Without more, the refusal to accept Mejia's papers simply does not amount to an "adverse employment action" under the ADA. Cf. Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999) (listing typical "adverse employment actions" under Title VII as "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion"); Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 271 (4th Cir. 2001) (holding that co-workers' refusal to speak to fellow employee did not constitute an "adverse employment action" under Title VII); Koch v. Schapiro, 759 F. Supp. 2d 67, 76 (D.D.C. 2011) ("[A]n employer's request for medical documentation for the purpose of assessing an employee's credibility or determining an appropriate accommodation is not an adverse employment action."); Tayag v. Lahey Clinic Hosp., Inc., 677 F. Supp. 2d 446, 453 (D. Mass. 2010) ("Being asked to produce additional paperwork, even if the request was unreasonable, does not constitute 'adverse employment action' under the ADA."), aff'd, 632 F.3d 788 (1st Cir. 2011).

Because Mejia's allegation of discrimination falls far

short of an "adverse employment action" for purposes of the ADA, even when liberally construed, Wal-Mart's motion to dismiss is granted as to this claim.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Wal-Mart's motion to dismiss (Doc. 14) is GRANTED and the case is DISMISSED.

/s/   Thomas D. Schroeder
United States District Judge

November 3, 2014